IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

THE UNITED STATES OF AMERICA

Plaintiff

vs.

THE COMMONWEALTH OF PUERTO RICO;

The Honorable PEDRO J. ROSSELLO, Governor of the Commonwealth of Puerto Rico, in his official capacity;

CIVIL 94-2080CCC

THE JUVENILE INSTITUTIONS ADMINISTRATION;

ZORAIDA BUXO, Secretary of the Department of Corrections and Rehabilitation, in her official capacity;

MIGUEL RIVERA, Director, Juvenile Institutions Administration, in his official capacity;

DR. CARMEN FELICIANO VDA. DE MELECIO, Secretary of Health, Department of Health, in her official capacity;

DR. NESTOR GALARZA, Director, Anti-Addiction Services Department, in his official capacity;

VICTOR FAJARDO, Secretary, Department of Education, in his official capacity;

PEDRO PIERLUISI, Secretary, Justice Department of the Commonwealth of Puerto Rico, in his official capacity;

CARMEN RODRIGUEZ, Secretary, Department of Social Services, in her official capacity;

DANIEL VAZQUEZ TORRES, Director Humacao Detention Center, in his official capacity;

EDGARD ORTIZ ALBINO, Director, Mayaguez Industrial School, in his official capacity;

NORMA CRUZ, Director, Ponce Central Training School, in her official capacity

FRANCISCA APONTE, Director, Ponce Victoria Street Training Center, in her official capacity;

PAULITO DIAZ DE GARCIA, Director, Ponce Detention Center for Girls and Ponce Industrial School for Girls and Boys, in her official capacity;

JULIO CUALIO BONET, Director, Guaynabo Training School, in his official capacity; and

LYDIA LASALLE, Acting Director, Central Metropolitan Training School of Bayamon, in her official capacity;

Defendants

## O R D E R

On April 10, 2007 the Court issued an Order setting an evidentiary hearing to be held on May 7, 2007 during which the United States would present proof of circumstances which, assessed against the narrowness/need/intrusiveness criteria of the Prison Litigation Reform Act, 18 U.S.C. § 3626(a)(1), warranted prospective relief and continued judicial involvement beyond such date. The day before such hearing the parties filed a Joint Motion Requesting Order Denying Defendants' March 8, 2007 Termination Motion Under the PLRA (docket entry 711) where they stated that they had "negotiated the terms of the proposed dismissal in good faith, with assistance from the Court Monitor, to reach a fair and reasonable resolution to the Commonwealth's PLRA Motion and ensure that the federal rights of juveniles confined in the Commonwealth's juvenile facilities are adequately protected." Joint Motion, at p. 1. This general statement was followed by the parties'

stipulations set forth at parts A, B, C, and D which list by number the provisions for termination, those that will be retained, and make reference to the status of the remaining provisions of the 1994 Consent Order (docket entry 2) and 1997 Settlement Agreement (docket entry 25).

Upon the parties' joint request, the defendants' March 8, 2007 Motion Under the PLRA to Terminate Prospective Relief Order Entered 12/19/97 (docket entry 676) is DENIED.

PROVISIONS TERMINATED:

Pursuant to their stipulations, the following provisions are terminated since they no longer meet the criteria which warrants prospective relief under the PLRA, 18 U.S.C. § 3626(a)(1):

1994 Consent Order - paragraphs 31, 32, 33, 35, 37, 38, 39 & 40.

1997 Settlement Agreement - paragraphs 28, 30, 36, 39, 40, 41, 42, 43, 46, 47, 51, 53, 54, 55, 56, 57, 58, 60, 61, 64, 65, 68, 69, 82, 83, 84, 85, 96, 97, 98.

PROVISIONS RETAINED:

Paragraph 48 of the 1997 Settlement Agreement, as modified, is retained.

The Court Monitor, in his attachment to the Motion Submitting the Monitor's Experts' Reports for the PLRA Hearing filed on April 30, 2007 (docket entry 714), indicated at page 43:

> ... the monitor's consultant believes that Defendants have not achieved substantial compliance with this provision.
> .....
>
> The monitor's consultant believes that Defendants have not achieved compliance in many respects, and that the areas of non-compliance are likely to result in serious patterns of injury, risk of injury or abuse. A consequence of insufficient staff coverage is that youths are not consistently supervised. Even when staff are present, if they have been working multiple shifts, their capacity to provide effective supervision is impaired.

This conclusion is supported by assessments of direct care staffing as part of pilot projects which focus on staff/youth ratios for specific shifts at certain AIJ facilities as well as the collection of data received by the Monitor's consultant for staffing gathered from documentation on staff/youth ratio for the CTS Guayama staff and from site visits to facilities such as the Guaynabo Correctional Complex and the Salinas Treatment Center. The latter produced information taken from staffing logs which reflected double shifts during the period of January 1 through April 24,

2007.

The provision, as modified by agreement of the parties and based on the Monitor's PLRA Report, meets the PLRA standard of narrowness/need/intrusiveness. This retained provision will serve to correct a deficiency in staffing which has persisted and which requires continued judicial review. The text of the provision, as modified by the parties, reads as follows:

> *48. Defendants shall ensure that the facilities have sufficient direct care staff to implement all terms of this agreement. Direct care staff supervise and participate in recreational, leisure and treatment activities with the juveniles. Compliance can be demonstrated in either of two ways.*
>
> *48.a Method One: Defendants may provide documentation of consistent supervision by not less than one (1) direct care worker to eight (8) juveniles during day and evening shifts and not less than one (1) direct care worker to sixteen (16) juveniles during normal sleeping hours.*
>
> *48.b Method Two: Defendants may develop, and submit to the Court for approval, an alternate staffing roster for any facility in this case. The roster shall be based on a study that shall specify fixed posts and the assignments necessary to implement the terms of this agreement, taking into consideration the physical configuration and function of spaces, the classifications and risk profiles of youths involved, the incident patterns in the settings involved, the routine availability in the settings of other categories of staff, and the overall numbers of direct care positions necessary to consistently achieve the coverage proposed. Once a plan is approved for a facility, Defendants shall document the employment of the necessary overall numbers of direct care staff, and the ongoing deployment of such staff in accordance with the plan.*

Paragraph 78 of the 1997 Settlement Agreement, as modified, is retained.

This has been a matter of continuous concern before the Court. Many of the areas of concern discussed during our in-chambers meetings from 2006 to this date are addressed in the modified version agreed to by the parties. It was the Court's position during these discussions that the lack of specificity of paragraph 78 led to an ineffective management of allegations of abuse and mistreatment of youths at the facilities. The parties' retention of paragraph 78, as amended, is an acknowledgment that the actions to be taken by defendant pursuant to paragraph 78 in response to allegations of abuse and mistreatment of juveniles is a critical component of a safe and reliable juvenile correctional system. The Monitor informs at page 106 of the PLRA Report that the sheer number of injuries, about 700 injuries in a system that houses fewer than 900 youths, establishes

a pervasive pattern of injury and abuse. He expressed the view that this could be mitigated by "evidence that the incidents are promptly addressed with immediate administrative actions, prompt and appropriately complete investigations, and appropriate subsequent actions involving administrative and prosecutorial measures." Paragraph 78, as modified in the Joint Motion, addresses the deficiencies which existed in the implementation of the original paragraph 78 by identifying concrete actions and steps to be taken by defendants if confronted with physical assault or mental abuse against juveniles by staff or by other juveniles. The modified version of paragraph 78 spans all stages, commencing at the time of the incident and through the different stages of investigation, administrative and criminal, and ending with prosecution.

The Court finds that the prospective relief outlined in amended paragraph 78 complies with the PLRA standard of narrowness/need/intrusiveness. It allows defendants to deal directly in the reporting and investigation of physical and mental abuses of juveniles in an organized manner that can result in an increased deterrence of assaults and injuries to juveniles and in a more effective form of reporting and investigating such incidents. It also allows for individual accountability regarding staff at the facilities during the course of the reporting and investigation of allegations of physical and mental abuse.

Modified paragraph 78 reads as follows:

> *78.a Defendants shall take prompt administrative action in response to allegations of abuse and mistreatment, including steps to protect and treat the victim, steps to preserve evidence and initiate investigations, steps to isolate, separate, and sanction youth and/or staff involved in misconduct or criminal conduct. Defendants' policies, procedures, and practices shall clearly define all incidents that must be reported, to include, at a minimum, allegations of: abuse, mistreatment, neglect, excessive use of force, inappropriate use of restraints, sexual misconduct, and assaults. Defendants shall provide for confidential means of reporting suspected abuse and mistreatment, without fear of retaliation for making such report.*
>
> *78.b All Defendants' staff or contractors who are involved in, witness, or discover an incident (or evidence of abuse or mistreatment, in the case of a health care worker) shall document the incident or evidence in writing in a standardized incident report. The report shall be submitted to the reporter's supervisor or other designated staff person before the reporter leaves the facility following shift change. The report shall include all relevant details regarding the incident, including a description of the events leading to and immediately following the incident; date, time and place; all persons involved, including*

*alleged victim(s) and all witnesses; how the incident was detected; reporter's name and signature; and date and time the report form was completed.*

*78.c Within 24 hours of knowledge of a potential abuse incident, the report shall be transmitted to the Commonwealth Police for investigation, the Department of Family Services for statistical reporting, the Department of Corrections, and the AIJ Administration. For serious incidents involving allegations of: abuse; neglect; excessive use of force; death; mistreatment; staff-on-juvenile assaults; injury requiring treatment by a licensed medical practitioner; sexual misconduct; exploitation of a juvenile's property; and commission of a felony by a staff person or juvenile, the AIJ administration shall also notify SAISC within 24 hours of knowledge of the potential incident, and 1 hour for any juvenile death, and SAISC shall conduct an administrative investigation.*

*78.d Within 24 hours, AIJ shall prepare and forward a copy of each incident report together with the AIJ preliminary investigation to the Police Department, the Department of Family Services, the Department of Corrections, and the AIJ Administration. Every 30 calendar days, AIJ, SAISC and the Commonwealth Police shall report to the Defendant Department of Justice and AIJ the status of each investigation including final determinations and associated administrative and criminal actions. Defendants shall implement appropriate policies, procedures, and practices to ensure that incidents are promptly, thoroughly, and objectively investigated. AIJ, SAISC, and Defendant Department of Justice shall consult throughout an investigation. If Defendant Department of Justice indicates an intent to proceed criminally, any compelled interview of the subject staff shall be delayed until Defendant Department of Justice concludes the criminal investigation, but all other aspects of the investigation shall proceed. Defendant Department of Justice shall review and investigate allegations of serious incidents following a preliminary investigation by the Puerto Rico Police Department.*

*78.e Administrative investigations of serious incidents shall be conducted by SAISC and completed within 30 days of SAISC's receipt of the referral. Administrative investigation of incidents classified as less serious may be conducted internally by appropriate facility staff and shall be completed within 20 days of witnessing or discovering an incident.*

*78.f Defendants shall implement investigation standards in conformance with applicable law, including, at a minimum: photographing visible injuries; preserving and analyzing evidence; conducting separate, face-to-face, private interviews of the alleged victim, perpetrator, and all possible witnesses, with a record of the questions and answers. Whenever there is reason to believe that a juvenile may have been subjected to physical sexual abuse, the juvenile shall be examined promptly by outside health care personnel with special training and experience in conducting such assessments.*

*78.g Every administrative investigation shall result in a written report explicitly providing: a description of the alleged incident, including all involved persons and witnesses and their role; a description and assessment of all relevant evidence; and proposed findings. Defendants shall ensure that there are sufficient numbers of demonstrably competent staff to timely complete competent and thorough administrative investigations. Responsibilities of investigators shall be clearly designated.*

*78.h AIJ shall conduct case management, for tracking which includes identification of findings and outcomes and dates of stages of case processing, and for oversight of further administrative actions including analysis to identify and implement corrective actions*

*designed to avoid recurrence of incidents. At the conclusion of an administrative investigation, SAISC shall provide copies of the investigation report to AIJ and Defendant Department of Justice. AIJ's quality assurance personnel shall analyze the report and, as appropriate, identify corrective action to address operational, systemic, or other problems identified in the report and ensure that such action is taken.*

*78.i Any employee, staff member or contractor who is criminally charged for offenses involving the abuse or mistreatment of juveniles, excessive force on juveniles, sexual misconduct with juveniles, or any other offense relating to the safety and welfare of juveniles, shall be immediately separated from having contact with detained or committed juveniles, including removal of any such person from exercising supervisory authority over any staff in AIJ facilities, while the criminal investigation or process is pending. Defendants may take additional administrative actions as they deem appropriate.*

Pursuant to the parties' Joint Motion, the remaining provisions of the 1997 Settlement Agreement, including ¶ 104 which incorporates by reference the provisions that remain of the 1994 Consent Order, are retained with the exact language as they now read. As to these retained remaining provisions, there is no dispute at this stage of the proceedings that they continue to comply with the PLRA requirements pursuant to 18 U.S.C. § 1326(b)(3).

SO ORDERED.

At San Juan, Puerto Rico, on May 15, 2007.

S/CARMEN CONSUELO CEREZO
United States District Judge